UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* TROMBETTA, *et al.*, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 96 C 226 & 99 C 151 consolidated |
| v. | ) ) ) | Judge Gottschall |
| EMSCO BILLING SERVICES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) | |

*FILED*
*MAY X 8 2006*
*JUDGE JUAN B. GOTTSCHALL*
*United States District Court*

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively "United States"), the State of Illinois, acting through the Illinois Attorney General, and on behalf of the Office of Inspector General (OIG) of the Illinois Department of Healthcare and Family Services (IDHFS) (collectively "State"), relator Linda Trombetta (Relator), and defendant Bonnie L. Smith, also known as Bonnie L. Tetik, (Ms. Tetik), through their authorized representatives (with United States, State, Relator, and Ms. Tetik collectively referred to as "Parties").

## II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.      Ms. Tetik is an individual who resides in the Northern District of Illinois. Ms.

Tetik, along with her ex-husband, Dr. Robert Tetik (Dr. Tetik), were the founders of EMSCO

Billing Services, Inc., an Illinois Corporation that had its principal place of business in Hinsdale,

Illinois, which provided billing services to hospital emergency room physicians. Until

September 1994, Ms. Tetik and Dr. Tetik were sole shareholders of EMSCO Billing Services,

Inc.

B.      Relator is a resident of the State of Illinois and a former employee of EMSCO

Billing Services, Inc., where she served as billing supervisor.

C.      Relator filed a *qui tam* complaint in the United States District Court for the

Northern District of Illinois on January 11, 1996, captioned *United States of America ex rel.*

*Linda Berlin v. EMSCO Billing Services, Inc., et al.,* No. 96 C 226, and on December 21, 2001

filed a first amended complaint (the *Trombetta* suit).

D.      The *Trombetta* suit alleged that Ms. Tetik violated the federal False Claims Act,

31 U.S.C. §§ 3729-3733, and the Illinois Whistleblower Reward and Protection Act, 740 ILCS

175/1 (IWRPA), at varying times from at least 1990 through 1997 by submitting or causing to be

submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social

Security Act, 42 U.S.C. §§ 1395-1395hhh, and to the Medicaid Program (Medicaid), Title XIX

of the Social Security Act, 42 U.S.C. §§ 1396-1396v, in the State of Illinois. The *Trombetta* suit

alleged that Ms. Tetik submitted or caused to be submitted inflated claims for reimbursement to

IDHFS (formerly known as the Illinois Department of Public Aid), which administers Medicaid

2

in the State of Illinois, and to Medicare, by incorrectly applying visit codes and procedure codes, and incorrectly including procedures performed by emergency room physicians in determining the level of service to be billed by emergency room physicians to Medicaid or Medicare for patients in Illinois.

E.     The United States intervened in part of the *Trombetta* suit on December 17, 2001. The Relator's federal claims as to which the United States intervened are referred to as the "Intervened Claims" and the Relator's claims as to which the United States declined to intervene are referred to as the "Declined Claims."

F.     The United States filed its complaint in this action on March 4, 2002 (the United States' Complaint).

G.     The United States contends that it has certain civil claims against Ms. Tetik under the False Claims Act, 31 U.S.C. §§ 3729-3733, other federal statutes, and/or the common law for engaging in the following conduct, hereinafter referred to as "Covered Conduct": at varying times from January 11, 1990, through August 1990, Ms. Tetik submitted or caused to be submitted inflated claims for reimbursement to IDHFS and to Medicare, by incorrectly applying visit codes, procedure codes, and/or including procedures performed by emergency physicians in determining the level of service to be billed by hospital emergency room physicians to Medicaid or Medicare for patients in Illinois.

H.     The United States contends also that it has certain administrative claims, under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) and 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) against Ms. Tetik for engaging in the Covered Conduct.

3

I.      The *Trombetta* suit and the United States' Complaint are collectively referred to
as the "Civil Actions."

J.      This Agreement is neither an admission of liability by Ms. Tetik nor a concession
by the United States or Relator that their claims are not well-founded.

K.      To avoid the delay, uncertainty, inconvenience, and expense of protracted
litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms
and Conditions below.

## III. TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants, and
obligations set forth below, and for good and valuable consideration as stated herein, the Parties
agree as follows:

1.      Ms. Tetik will pay to the United States one hundred seventy thousand dollars
($170,000) on the Intervened Claims and thirty thousand dollars ($30,000) on the Declined
Claims by electronic funds transfer pursuant to written instructions to be provided by the United
States Attorney's Office. The $200,000 total settlement amount on the Intervened and Declined
Claims is referred to herein as the "Settlement Amount." Ms. Tetik also will pay to Relator's
counsel twenty thousand dollars ($20,000) for attorneys' fees, expenses, and costs. Ms. Tetik
will make these payments--$200,000 to the United States and $20,000 to the Relator's counsel--
within seven days of the Effective Date of this Agreement, and Ms. Tetik will make her $200,000
payment to the United States by wire transfer pursuant to directions provided by the United
States Attorney's Office for the Northern District of Illinois.

4

2.      Upon receipt of the Settlement Amount, the United States agrees to pay (a) $38,000 to the Relator pursuant to her instructions and (b) $40,500 to the State of Illinois, made payable to the "State of Illinois," and delivered to the Office of the Illinois Attorney General, Attention Patrick Keenan.

3.      Subject to the exceptions in Paragraph 8 below, in consideration of the obligations of Ms. Tetik set forth in this Agreement, conditioned upon Ms. Tetik's payment in full of the Settlement Amount and subject to Paragraph 18 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or of any payment under this Agreement), the United States, on behalf of itself, its officers, agents, agencies, and departments, agrees to release Ms. Tetik, her successors, transferees, assigns, and heirs, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. § 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812, the Civil Monetary Penalties Law, 42 U.S.C. §1320a-7a, and the common law theories of payment by mistake, unjust enrichment, and fraud.

4.      Subject to the exceptions in Paragraph 8 below, in consideration of the obligations of Ms. Tetik set forth in this Agreement, conditioned upon Ms. Tetik's payment in full of the Settlement Amount and subject to Paragraph 18 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or of any payment under this Agreement), the State of Illinois, on behalf of itself, its officers, agents, agencies, and departments, agrees to release Ms. Tetik, her successors, transferees, assigns, and heirs, from any civil monetary claim the State of Illinois has or may have under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, or any other common law or equitable cause or action for the Covered Conduct.

5

5.   OIG-HHS expressly reserves all rights to institute, direct, or maintain any administrative action seeking exclusion against Ms. Tetik from Medicare, Medicaid, or other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7a (mandatory exclusion) or 42 U.S.C. § 1320a-7(b) (permissive exclusion).

6.   IDHFS expressly reserves all rights to institute, direct, or maintain any administrative action seeing exclusion against Ms. Tetik from the Illinois Medical Assistance Program under 305 ILCS 5/12-4.25(A) (permissive exclusion), 305 ILCS 5/12-4.25(B) (mandatory exclusion), or 89 Ill. Admin. Code § 140.16.

7.   Subject to the exceptions in Paragraph 8 below, in consideration of the obligations of Ms. Tetik set forth in this Agreement, conditioned upon Ms. Tetik's payment in full of the Settlement Amount and subject to Paragraph 18 below (concerning bankruptcy proceedings commenced within 91 days of any payment under this Agreement), the Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, agrees to release Ms. Tetik, her successors, affiliates, assigns, and heirs, from any civil monetary claim the Relator has or may have under the False Claims Act, 31 U.S.C. § 3729-3733, or the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/11, arising out of or related to the Covered Conduct or the conduct alleged in support of the Declined Claims.

8.   Notwithstanding any term of this Agreement, including but not limited to the releases provided in Paragraphs 3, 4, and 7, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person are any and all of the following claims of the United States:

   a.   Any civil, criminal, or administrative claims arising under Title 26, U.S. Code (Internal Revenue Code);

6

b.     Any criminal liability;

c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.     Any liability to the United States (or its agencies) or the State of Illinois (or its agencies) for any conduct other than the Covered Conduct;

e.     Any liability based upon such obligations as are created by this Agreement;

f.     Any civil, administrative, or criminal liability of EMSCO Billing Services, Inc., EMSCO Management Services, Inc., Dr. Tetik, National Emergency Services, Inc., NES Holdings, Inc., Alan Rappaport, or any other defendants named in the Complaints filed by the United States, the State of Illinois, or the Relator;

g.     Any civil or administrative liability that Ms. Tetik has or may have under any State of Illinois or United States' statute, regulation, or rule not covered by the releases in Paragraphs 3, 4, or 7 of this Agreement;

h.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services that may be brought under state consumer protection statutes;

i.     Any liability for failure to deliver goods or services due;

j.     The specificity of any of the preceding subparagraphs a-i or parts thereof in this Paragraph 8 does not limit the generality of any of the other subparagraphs, or parts thereof, in this Paragraph 8.

9.     Conditioned upon receipt of the payments described in Paragraph 2, Relator, for herself individually, and for her heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the United States, its officers, agents, and employees, from any

7

claims arising from or relating to 31 U.S.C. § 3730, including 31 U.S.C. §§ 3730(b), (c), and (d), from any claims arising from the filing of the Civil Actions, and from any other claims for a share of the Settlement Amount, and in full settlement of any claims Relator may have under this Agreement. This Agreement does not resolve or in any manner affect any claims the United States has or may have against the Relator arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

10. Conditioned upon receipt of the payments described in Paragraph 2, Relator, for herself individually, and for her heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the State of Illinois, its officers, agents, and employees, from any claims arising from or relating to 740 ILCS 175/1 et seq., from any claims arising from the filing of the Civil Actions, and from any other claims for a share of the Settlement Amount, and in full settlement of any claims Relator may have under this Agreement.

11. Ms. Tetik waives and shall not assert any defenses she may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or any comparable provision in Article 1, section 10, of the Illinois Constitution or under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, or any comparable provision in Article 1, section 11, of the Illinois Constitution, this Agreement bars a remedy sought in such criminal prosecution or

administrative action. Nothing in this Paragraph or any other provision of this Agreement

constitutes an agreement by the United States or the State of Illinois concerning the

characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of

the United States Code, and/or Chapter 35 or Chapter 320 of the Illinois Compiled Statutes.

12.     Ms. Tetik fully and finally releases the United States, the State of Illinois, and

their agencies, employees, servants, and agents from any claims (including attorney's fees, costs,

and expenses of every kind and however denominated) that Ms. Tetik has asserted, could have

asserted, or may assert in the future against the United States, the State of Illinois, and their

agencies, employees, servants, for the Covered Conduct and the investigation and prosecution

thereof.

13.     The Settlement Amount shall not be decreased as a result of the denial of claims

for payment now being withheld from payment by any Medicare carrier or intermediary or any

State payer for the Covered Conduct; and Ms. Tetik shall not resubmit to any Medicare carrier or

intermediary or any State payer any previously denied claims related to the Covered Conduct,

and shall not appeal any such denials of claims.

14.     Ms. Tetik agrees to the following:

a.      Unallowable Costs Defined: That all costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47, and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v, and the regulations and official

9

program directives promulgated thereunder) incurred by or on behalf of Ms. Tetik, her heirs,

successors, and present or former employees, attorneys, agents, and assigns in connection with

the following shall be "Unallowable Costs" on government contracts and under the Medicare

Program, Medicaid Program, TRICARE Program (TRICARE), and Federal Employees Health

Benefits Program (FEHBP):

> (1) the matters covered by this Agreement;
>
> (2) the United States' audits and civil and any criminal investigation(s) of the matters covered by this Agreement;
>
> (3) Ms. Tetik's investigation(s), defense, and corrective actions undertaken in response to the United States' audits and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);
>
> (4) the negotiation and performance of this Agreement; and
>
> (5) the payments Ms. Tetik makes to the United States pursuant to this Agreement and any payments that Ms. Tetik may make to Relator, including costs and attorneys fees.

(All costs described or set forth in this Paragraph 14a are hereafter referred to as "Unallowable

Costs.")

> b.     Future Treatment of Unallowable Costs: These Unallowable Costs shall

be separately determined and accounted for by Ms. Tetik, and Ms. Tetik shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any state

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Ms. Tetik or any company,

subsidiary, or affiliate owned or controlled by Ms. Tetik to the Medicare, Medicaid, TRICARE,

or FEHBP Programs.

c.     Treatment of Unallowable Costs Previously Submitted for Payment: Ms. Tetik further agrees that within 90 days of the Effective Date of this Agreement she shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, VA, and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph 14) included in payments previously sought from the United States, or any state Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Ms. Tetik or any of her companies, subsidiaries, or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Ms. Tetik agrees that the United States and State of Illinois, at a minimum, shall be entitled to recoup from Ms. Tetik any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements, or requests for payment. Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies, or if applicable, to the State of Illinois pursuant to the direction of the Office of the Illinois Attorney General. The United States and State of Illinois reserve their rights to disagree with any calculations submitted by Ms. Tetik or any of her companies, subsidiaries, or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph 14) on Ms. Tetik's or any of her companies', subsidiaries', or affiliates' cost reports, cost statements, or information reports.

d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States or State of Illinois to audit, examine, or reexamine Ms. Tetik's books to determine

11

that no Unallowable Costs have been claimed in accordance with the provisions in this Paragraph 14.

15.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 below.

16.     Ms. Tetik waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct or the claims underlying the conduct alleged in support of the Declined Claims.

17.     Ms. Tetik warrants that she has reviewed her financial situation and that she currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Ms. Tetik within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Ms. Tetik was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18.     In the event Ms. Tetik commences, or a third party commences, within 91 days of the Effective Date of this Agreement or of any payment under this Agreement, any case,

12

proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of the debts of Ms. Tetik, or seeking to adjudicate Ms. Tetik as bankrupt or insolvent, or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Ms. Tetik or for all or any substantial part of the assets of Ms. Tetik (any such case, proceeding, or other action is referred to herein as "Insolvency Action"), Ms. Tetik agrees as follows:

a.    Ms. Tetik's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Ms. Tetik shall not argue or otherwise take the position in any such Insolvency Action that: (i) Ms. Tetik's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Ms. Tetik was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payments made to the United States and State of Illinois hereunder; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Ms. Tetik.

b.    In the event that Ms. Tetik's obligations hereunder are avoided for any reason, including but not limited to through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States and the State of Illinois each has the option to rescind its releases under this Agreement, and bring any civil or administrative claims, actions, or proceedings against Ms. Tetik for the claims that would otherwise be covered in this Agreement, including but not limited to the releases in Paragraphs 3, 4, and 7 (any such civil or administrative claim, action, or proceeding is referred to herein as "Such Proceeding"). If the United States and the State of Illinois, or either of them, opts to rescind, then Ms. Tetik (i) shall not contend that any Such Proceeding (including any proceedings to exclude her from

13

participation in Medicare, Medicaid, or other Federal health care programs) is subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the Insolvency Action, and that Ms. Tetik shall not argue or otherwise contend that any Such Proceeding is subject to an automatic stay; (ii) shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any Such Proceeding brought by the United States or the State of Illinois, or both of them within 90 calendar days of written notification to her that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) shall not dispute that the United States and the State of Illinois, or either of them, has a valid claim against Ms. Tetik in the amount of $1,000,000 as well as an additional $11,000 penalty under the False Claims Act, 31 U.S.C. § 3729-3733, and an additional $10,000 penalty under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 *et seq.*, for each false claim (false claim) submitted to the United States and the State of Illinois, or either of them, and the United States and the State of Illinois, or either of them, may pursue each false claim, *inter alia,* in the Insolvency Action and Such Proceeding, or either of them, as well as in any other case, action, or proceeding.

       c.    Ms. Tetik acknowledges that her agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

    19.    Except as expressly provided to the contrary in this Agreement, each of the Parties shall bear its or her own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14

20.     Ms. Tetik represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

21.     The Relator represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

22.     This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the Northern District of Illinois (District Court).

23.     This Agreement constitutes the complete agreement among the Parties. This Agreement may not be amended except by written consent of the Parties.

24.     Within seven days of receipt of the payments described in Paragraph 1 above and conditioned on the reservations in Paragraph 8 above, the United States will attach a copy of this Settlement Agreement to an Order Dismissing This Action in the form attached hereto as Exhibit A (except for the Exhibit A heading), and transmit it to Relator for execution, and Relator will transmit it to Ms. Tetik for execution. Then, Ms. Tetik will transmit it to the United States for execution and filing with the District Court.

25.     The individuals signing this Agreement on behalf of Ms. Tetik represent and warrant that they are authorized by Ms. Tetik to execute this Agreement. The individuals signing this Agreement on behalf of the Relator represent and warrant that they are authorized by Relator to execute this Agreement. The individuals signing on behalf of the United States and State of Illinois represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

15

26.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

27.     This Agreement is binding on Ms. Tetik's successors, transferees, heirs, and assigns.

28.     All parties consent to the United States' and State of Illinois' disclosure of this Agreement, and information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).

30.     The District Court shall retain jurisdiction over this case for purposes of enforcing the Agreement.

16

THE UNITED STATES OF AMERICA

PATRICK J. FITZGERALD
United States Attorney

Date signed: _4 - 21 - 06_

PATRICK W. JOHNSON
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5327

Date signed: _4/24/66_

GREGORY E. DEMSKE
Assistant Inspector General
  for Legal Affairs
Office of Inspector General
United States Department of
Health and Human Services

17

THE STATE OF ILLINOIS

LISA MADIGAN
Attorney General

Dated: _____

Patrick Keenan
Assistant Attorney General
State of Illinois
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3796

BARRY S. MARAM
Director, Illinois Department of Public Aid

Dated: 2/6/06

Barry S. Maram
Director
Illinois Department of Public Aid
201 South Grand Avenue East
Springfield, Illinois 62763
(217) 782-7755

18

<u>DEFENDANT BONNIE L. SMITH, ALSO KNOWN AS BONNIE L. TETIK</u>

Date signed: _____4-19-06_____

Bonnie L. Smith
also known as Bonnie L. Tetik

Date signed: _____

ANTHONY J. PERAICA
Attorney for Bonnie L. Smith, also known as
Bonnie L. Tetik

19

DEFENDANT BONNIE L. SMITH, ALSO KNOWN AS BONNIE L. TETIK

Date signed _____

Bonnie L. Smith
also known as Bonnie L. Tetik

Date signed _____

ANTHONY J. PERAICA
Attorney for Bonnie L. Smith, also known as
Bonnie L. Tetik

19

RELATOR LINDA TROMBETTA

Date signed: _4-19-06_

STEVEN H. COHEN
Attorney for Relator Linda
Trombetta